# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

**YASMIN C. REYES DE LEON,**

**Plaintiff,**

**v.**

**COCONUT PROP., LLC d/b/a COCONUT PROP., INC; UNITED STATES OF AMERICA; U.S. DEP'T OF HOMELAND SEC., and; FED. EMERGENCY MGMT. AGENCY,**

**Defendants.**

**CIVIL NO. 20-1313 (GAG)**

## OPINION AND ORDER

Yasmin C. Reyes de Leon ("Reyes de Leon" or "Plaintiff") filed the above-captioned complaint against Coconut Properties, LLC, d/b/a Coconut Properties, Inc., the United States of America, the Department of Homeland Security, and the Federal Emergency Management Agency ("FEMA") alleging breach of contract, unjust enrichment, and fraudulent representation after FEMA supposedly failed to remove Katherine Ortiz ("Ortiz") from Plaintiff's property at the end of the temporary housing period that was part of FEMA's emergency response in the aftermath of Hurricanes Irma and Maria. (Docket No. 1). Plaintiff seeks to recover for breach of contract under 28 U.S.C. § 1346(a)(2) ("The Tucker Act") as well as Articles 1054, 1059, 1060 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 3018, 3023, and 3024. (Docket No. 1 ¶¶ 37, 40).

Presently before the Court is United States of America's motion to dismiss the instant complaint as to itself, FEMA, and the Department of Homeland Security (collectively, "Defendants") for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(1), (6). (Docket No. 16). Plaintiff opposed. (Docket No. 20). With

**Civil No. 20-1313 (GAG)**

leave of Court, Defendants replied. (Docket No. 40). For the ensuing reasons, the Court **GRANTS** Defendants' motion to dismiss at Docket No. 16.

### I. Factual Background

On September 20, 2017, in the aftermath of Hurricane Maria, FEMA issued declaration FEMA-DR-4339-PR declaring the Commonwealth of Puerto Rico the site of a major disaster pursuant to 42 U.S.C. § 5121 *et seq.* ("the Stafford Act"). (Docket No. 1 ¶¶ 12-13). The declaration was scheduled to end on March 20, 2019, but was later extended through September 20, 2019. Id. ¶ 13. As part of its emergency response, FEMA offered Direct Temporary Housing Assistance ("DTHA") to eligible applicants under 42 U.S.C. § 5174. Id. ¶ 12. FEMA implemented a Direct Lease Program to provide DTHA, which allowed approved applicants to stay in temporary housing until the Direct Lease Program ended on September 20, 2019. (Docket Nos. 1 ¶ 12; 16 at 7, 9). FEMA contracted out all of its administrative functions regarding property leasing for the Direct Lease Program to property management companies such as Coconut Properties, LLC. (Docket Nos. 1 ¶¶ 14-15; 16 at 8; 16-1 (Blanket Purchase Agreement) at 9). FEMA's sole responsibility was to assess whether applicants met the eligibility requirements of the Direct Lease Program. (Docket Nos. 1 ¶ 12; 16 at 8).

On February 12, 2018, Reyes de Leon signed a property management agreement with Coconut Properties, LLC, regarding her three-bedroom real estate property in Ponce, Puerto Rico. (Docket Nos. 1 ¶ 16). This agreement "indicated that the 'agent' Coconut Properties, LLC was under contract to [FEMA] to lease on its behalf the property to be utilized to provide housing to eligible individuals[.]" Id. On May 16, 2018, Coconut Properties, LLC, signed a temporary housing agreement with Ortiz, which provided Reyes de Leon's property to Ortiz as temporary housing assistance. (Docket Nos. 1 ¶ 17; 16-3 (Temporary Housing Agreement)).

**Civil No. 20-1313 (GAG)**

Despite receiving FEMA's written notifications to vacate, Ortiz remained in possession of Reyes de Leon's property beyond the Direct Lease Program's expiration date on September 30, 2019. (Docket No. 1 ¶¶ 17, 19, 21). Reyes de Leon continues to pay both the utilities and the mortgage of the property after the temporary housing agreement ended. Id. ¶¶ 19, 21. Likewise, Reyes de Leon incurred legal expenses from an eviction process that she initiated in Puerto Rico Local Court. Id. ¶ 19.

After the Direct Lease Program ended, a FEMA quality assurance specialist told Reyes de Leon over email that FEMA would continue to pay Ortiz's rent until she vacated the property. (Docket Nos. 1 ¶ 17; 16 at 9; 16-7 (Email)).

## II. Motion to Dismiss for Lack of Subject-Matter Jurisdiction: 12(b)(1)

### a. Standard of Review

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). Marrero v. Costco Wholesale Corp., 52 F. Supp. 3d 437, 439 (D.P.R. 2014). When considering a 12(b)(1) motion, the Court may consider all pleadings submitted by the parties. Aversa v. U.S., 99 F.3d 1200, 1210 (1st Cir. 1996). The Court "is not restricted to the face of the pleadings but may consider extra-pleading materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." Fernández Molinary v. Industrias La Famosa, Inc., 203 F. Supp. 2d 111, 114 (D.P.R. 2002) (citing Land v. Dollar, 330 U.S. 731, 735 (1947)). The pertinent inquiry is whether the challenged pleadings set forth allegations sufficient to demonstrate that the subject matter jurisdiction of the Court is proper. Marrero, 52 F. Supp. 3d at 439; Casey v. Lifespan Corp., 62 F. Supp. 2d 471, 474 (D.R.I. 1999).

A Rule 12(b)(1) challenge comes in two forms: (1) defendants can challenge the pleader's compliance with FED. R. CIV. P. 8(a)(1), or (2) defendants can challenge the Court's actual subject matter jurisdiction, regardless of the formal sufficiency of the pleadings. Torres Vazquez v. Com.

**Civil No. 20-1313 (GAG)**

Union Ins. Co., 417 F. Supp. 2d 227, 236 (D.P.R. 2006). A pleading alleges that subject matter jurisdiction is defective under FED. R. CIV. P. 8(a)(1) "when the allegations in the complaint are insufficient to show that the federal court has jurisdiction over the subject matter of the case." Torres Vazquez, 417 F. Supp. 2d at 236-37, n. 7. In other words, the complaint is defective and must be dismissed despite the existence of actual subject matter jurisdiction, unless the deficiency is cured. See id. at 236, n. 7.

The burden of proof in a 12(b)(1) motion falls on the party asserting jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942). In reviewing the motion, the Court must construe the complaint liberally and the pleadings are to be taken as true, "according the plaintiff the benefit of all reasonable inferences." Murphy v. U.S., 45 F.3d 520, 522 (1st Cir. 1995). Dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable. Sumitano Real Estate Sales (N.Y.), Inc. v. Quantum Dev. Corp., 434 F. Supp. 2d 93, 95 (D.P.R. 2006). Lastly, the Court has broad discretion as to the manner in which preliminary questions of jurisdiction are to be resolved. Torres Vazquez, 417 F. Supp. 2d at 233, n. 3.

b. Legal Analysis and Discussion

Defendants argue that the Court lacks subject matter jurisdiction because Plaintiff's claims—founded upon FEMA's major disaster declaration—are of the exclusive jurisdiction of the United States Court of Federal Claims. (Docket No. 16 at 2, 12-14). Defendants cite 28 U.S.C. § 1491(a)(1), which states, in relevant part, that the United States Court of Federal Claims shall have jurisdiction over claims against the United States founded upon any express or implied contract with the United States. (Docket No. 16 at 2, 12). Defendants point to 28 U.S.C § 1346(a)(2), stating that district courts have concurrent jurisdiction with the United States Court of Federal Claims over claims against the United States not exceeding $10,000. (Docket No. 16 at 12).

**Civil No. 20-1313 (GAG)**

The Tucker Act, 28 U.S.C. §§ 1346, 1491, functions as a waiver of sovereign immunity and is thus strictly construed by courts. Smith v. Orr, 855 F.2d 1544, 1552-53 (5th. Cir. 1988) (citing Library of Congress v. Shaw, 478 U.S. 310, 317 (1986)). As such, the appropriate measure to determine the amount in controversy is "the total amount of back pay the plaintiff stands *ultimately to recover in the suit* and is not the amount of back pay accrued at the time the claim is filed." Smith, 855 F.2d at 1553 (emphasis added). "Any other interpretation would circumvent congressional intent in limiting the Tucker Act jurisdiction of the district courts to claims not exceeding $10,000." Id.

According to her complaint, Plaintiff claims $9,000.00 from the United States pursuant to 28 U.S.C. § 1346, stemming from the contract formed when the "United States of America took plaintiff's property and gave its possession to a third party." (Docket No. 1 ¶¶ 3-4, 40-41). In addition, Plaintiff claims damages in the amount of $103,510.00 from Coconut Properties, LLC. Id. ¶¶ 3, 42. Plaintiff seeks a combined total compensation of $112,510.00. Id. ¶ 24. However, because Plaintiff states in her complaint that "[d]efendants are jointly and severally liable," Id. ¶ 43, and later states in her opposition that FEMA may be held vicariously liable, (Docket No. 20 at 7-8), Plaintiff's aggregate claim far exceeds the $10,000 limit for monetary claims against the federal government in district courts.

Plaintiff correctly notes that plaintiffs with monetary claims against the United States in excess of $10,000 can proceed in district courts if they waive all recovery in excess of that amount. (Docket No. 20 at 7) (citing Zumerling v. Devine, 769 F.2d 745, 748 (Fed. Cir. 1985); Stone v. United States, 683 F.2d 449, 451 (D.C. Cir. 1982)). Nevertheless, Plaintiff fails to indicate that she waives recovery in excess of $10,000.

The Court has subject matter jurisdiction over Plaintiff's claim against the United States for $9,000 because the claim is below the maximum $10,000 claim limit for Tucker Act claims in

district courts. However, by failing to waive all recovery over $10,000 in conjunction with Plaintiff's allegations of joint and several liability or, as in later pleadings, vicarious liability, the challenged pleadings have failed to set forth allegations sufficient to demonstrate that the subject matter jurisdiction of the Court is proper pursuant to FED. R. CIV. P. 8(a)(1) and 12(b)(1). As such, Plaintiff's pleading as to the claims for breach of contract, unjust enrichment, and false representations is defective and must be dismissed. Torres Vazquez, 417 F. Supp. 2d at 236, n. 7.

### III. Motion to Dismiss: 12(b)(6)

#### a. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6), the Court analyzes the complaint in a two-step process using the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm'n., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011), which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). First, the Court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55. A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Second, the Court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the Court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 679). This "simply calls for

**Civil No. 20-1313 (GAG)**

enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). If, however, the "factual content, so taken 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

Moreover, at the motion to dismiss stage, "the Court may consider: [1] 'implications from documents' attached to or fairly 'incorporated into the complaint,' [2] 'facts' susceptible to 'judicial notice,' and [3] 'concessions' in a plaintiff's 'response to the motion to dismiss.'" Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013) (quoting Schatz, 669 F.3d at 55-56). At the Court's discretion, if it chooses to consider materials outside of the pleadings, a motion to dismiss should be converted to a motion for summary judgement under FED. R. CIV. P. 56. See Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008).

Under certain "narrow exceptions," some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgement. Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). These exceptions include "documents, the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint." Freeman, 714 F.3d at 36 (quoting Watterson, 987 F.2d at 3). "[I]t is well-established that in reviewing the complaint, we 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.'" Clorox Co. P.R. v. Proctor &

Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000) (citing Watterson, 987 F.2d at 3-4); see also Schatz, 669 F.3d 55-56, n. 3.

      b.   Discussion

Defendants maintain that Plaintiff does not have standing under FED. R. CIV. P. 12(b)(6) to state a plausible breach of contract claim upon which relief can be granted because "any alleged injury she suffered is not traceable to Defendants." (Docket No. 16 at 2, 14-15). Specifically, Defendants argue that Plaintiff's breach of contract claims fail "for the reasons stated in Plaintiff's complaint—she did not have a contract with FEMA." (Docket No. 16 at 14 (citing Docket No. 1 ¶¶ 16, 20)). Instead, Defendants point out that Plaintiff solely entered into a property lease with Coconut Properties, LLC, who "had the contractual obligation to the property owner[, Reyes de Leon,] to properly inform and adhere to the program requirements and obligations as directed in its [agreement with FEMA,]" (Docket No. 16-1 (Blanket Purchase Agreement) at 9), "and Statement of Work," (Docket No. 16-2 at 3), "including the landlord-tenant lease requirement," (Docket No. 16-5 (Occupant Lease Agreement) at 4), "that informed the landlord[, Reyes de Leon,] to effect evictions" against her tenant, Ortiz. (Docket No. 16 at 14-15).

Defendants further support the contention that Reyes de Leon never signed a contract directly with FEMA by citing to the Lease Addendum, which states: "The Owner[, Reyes de Leon,] agrees to pursue eviction based on FEMA's determination of ineligibility or end of the period of assistance." (Docket Nos. 16-4 (Lease Addendum) ¶ 16(b); 40 at 2). The Lease Addendum likewise contains a controlling provision stating that "in the case of any conflict between the provisions of this Addendum and other sections of the Lease between the Owner[, Reyes de Leon,] and Applicant, [Ortiz,] the provisions of this Addendum shall apply." (Docket No. 16-4 (Lease Addendum) ¶ 1). As a condition of occupancy, Ortiz was "required to execute [the temporary housing agreement with Coconut Properties, LLC,] and a landlord-tenant Lease[] with the Owner[, Reyes de Leon,]

**Civil No. 20-1313 (GAG)**

along with the required FEMA Lease addendum." (Docket No. 16-3 (Temporary Housing Agreement) at 1-2).

Defendants conclude that "FEMA neither entered into a property lease with [Ortiz] nor a property lease with the Plaintiff" because Reyes de Leon solely had a contract with Coconut Properties, LLC, since FEMA contracted out all of its functions regarding property leasing to Coconut Properties, LLC. (Docket Nos. 16 at 7-8; 40 at 4; 16-1 (Blanket Purchase Agreement) at 9).

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To meet its burden of establishing standing, a plaintiff must show: (1) an injury in fact; (2) fairly traceable to the defendant's challenged conduct; (3) likely to be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Env't. Servs., 528 U.S. 167, 180-81 (2000).

To satisfy the traceability element of standing, Plaintiff argues that "between the plaintiff and defendants there was the formation of a written contract," under the terms of which Plaintiff has fully performed. (Docket No. 1 ¶¶ 26, 40). As the Court understands it, Plaintiff cites to the "Direct Lease Contract" for support that FEMA entered into a lease agreement with Plaintiff. Id. ¶ 14. Plaintiff interprets this document to say that FEMA became Plaintiff's tenant. Id. Plaintiff finds further support for this contention in Defendants' Motion to Dismiss, in which Defendants cite to 42 U.S.C § 5174(c)(1)(B)(ii)(I)(aa) to explain that "FEMA can enter into property lease agreements with property owners . . ." (Docket No. 20 at 7 (citing Docket No. 16 at 6)). When quoting this passage from Defendants' motion to dismiss, Plaintiff omitted the final limiting clause prohibiting property lease agreements with survivor-tenants as well as the next sentence explaining, "[i]n this case, FEMA contracted Coconut Properties[, LLC] to administer the Direct Lease Program and engage in and enter into lease agreements with the property owners." (Docket No. 16 at 6).

9

**Civil No. 20-1313 (GAG)**

The conclusory statements in Plaintiff's complaint alleging, without proof, a lease between FEMA and Reyes de Leon, whereby FEMA would have a duty to evict Ortiz, are in direct conflict with statements in the evidence of record, which clearly states both that Plaintiff did not have a lease with FEMA and that FEMA was not responsible for evicting Ortiz. The Court may properly consider these exhibits without converting the FED. R. CIV. P. 12(b)(6) motion into a Rule 56 summary judgement motion because the exhibits are documents central to Plaintiff's breach of contract claim and are sufficiently referred to in the complaint. Watterson, 987 F.2d at 3-4.

Plaintiff misconstrues FEMA's role in this Direct Lease Program. Accepting all of Plaintiff's non-legal conclusory statements of fact, Plaintiff fails to show a contract between herself and FEMA. FEMA does not have statutory authority to enter into a leasing agreement with Plaintiff under 42 U.S.C. § 5174(c)(1)(B)(ii)(I)(aa).[1] Moreover, the Lease Addendum clearly states that it is Reyes de Leon's duty as the owner to evict the tenant. (Docket No. 16-4 ¶ 16(b)). Coconut Properties, LLC, was responsible for all leasing components of the Direct Lease Program, not FEMA. (Docket No. 16-2 (Statement of Work) at 1). FEMA was solely responsible for screening applicant-tenants during this process. (Docket No. 16-1 at 9 (Blanket Purchase Agreement)). Thus, FEMA cannot be held liable for failing to evict Ortiz because FEMA neither signed a contract with Plaintiff nor had a duty to evict. Plaintiff's breach of contract claim is more properly aimed at Coconut Properties, LLC, rather than FEMA.

Plaintiff's fraudulent representation claim also fails to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). Accepting as true Plaintiff's statement that a FEMA representative told her that FEMA would pay rent for the tenant's holdover period (Docket No. 16-7 (Email) at 1), Plaintiff cannot collect damages because payments from the United States Treasury

---

[1] 42 U.S.C § 5174(c)(1)(B)(ii)(I)(aa) authorizes FEMA to enter into lease agreements only with owners of multifamily rental properties.

are limited to those authorized by statute, and a government employee's erroneous advice to a benefits claimant "does not create a basis for providing benefits not otherwise permitted by law." Yancey v. District of Columbia, 991 F. Supp. 2d 171, 178 (D.D.C. 2013) (citing Off. Of Pers. Mgmt. v. Richmond, 496 U.S. 414, 415-16, 423-24, 429 (1990)).

Lastly, Plaintiff's unjust enrichment claim against Defendants likewise fails to state a claim under FED. R. CIV. P. 12(b)(6). Once the Direct Lease Program ended, Defendants no longer had an obligation to provide housing for Ortiz. Plaintiff has thus failed to demonstrate how Defendants benefited from Ortiz's holdover period.

**IV.    Conclusion**

Plaintiff's claims against the United States of America, the Department of Homeland Security, and FEMA, a/k/a Defendants, must be dismissed under FED. R. CIV. P. 12(b)(1) because Plaintiff's allegations of the Court's subject matter jurisdiction are defective under FED. R. CIV. P. 8(a)(1). In addition, Plaintiff lacks standing to assert her breach of contract claims against the Defendants and shall be dismissed pursuant to FED. R. CIV. P. 12(b)(6) because Plaintiff cannot demonstrate the existence of a contract between FEMA and herself that imposed upon FEMA contractual duties to evict Ortiz at the end of the Direct Lease Program. Moreover, Plaintiff's fraudulent representation claim fails to state a claim upon which relief can be granted according to Rule 12(b)(6) because Defendants are not statutorily permitted to pay for Ortiz's stay beyond the end of the Direct Lease Program. Lastly, Plaintiff fails to state an unjust enrichment claim under Rule 12(b)(6) because Plaintiff cannot prove that Defendants themselves benefited from Ortiz's rent-free stay beyond the end of the Direct Lease Program.

**Civil No. 20-1313 (GAG)**

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss at Docket No. 16.

**SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of July 2021.

            *s/ Gustavo A. Gelpí*
            GUSTAVO A. GELPI
          United States District Judge